UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Walter H. Ruano Juarez, Sr. o/b/o R.R.O., a minor,

    Plaintiff,

- *against* -

Nancy Berryhill,
Acting Commissioner of Social Security,

    Defendant.

18CV189 (LMS)

DECISION AND ORDER

**LISA MARGARET SMITH, U.SM.J.**

    Plaintiff Walter H. Ruano Juarez, Sr. ("Plaintiff") brings this action on behalf of his daughter, R.R.O. ("Claimant"), pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision to deny his daughter supplemental security income ("SSI"). Plaintiff has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking to have the Commissioner's decision reversed and the case remanded for a calculation and award of benefits or, in the alternative, remanded for further proceedings so that the record may be further developed and/or the ALJ may explain the rationale for his decision. Docket # 15. The Commissioner has cross-moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), claiming that the denial of benefits should be upheld as legally correct and supported by substantial evidence. Docket # 17. For the reasons that follow, Plaintiff's motion is denied, the Commissioner's cross-motion is granted, and the case is dismissed.

1

I.   **BACKGROUND**

   A.   **Procedural History**

Plaintiff filed an application for SSI on behalf of Claimant on June 13, 2014,[1] with an alleged disability onset date of February 1, 2014. AR 66-73, 122-31. Claimant was alleged to be disabled due to a learning disability, speech delay, and thyroid condition. AR 66, 69. The claim was initially denied on September 12, 2014. AR 100-04. Thereafter, Plaintiff filed a written request for a hearing. AR 106-18. Plaintiff, Claimant, and Claimant's mother appeared, unrepresented, before the ALJ and testified at a hearing held on July 20, 2016. AR 54-65. On October 13, 2016, the ALJ issued a decision finding that Claimant was not disabled. AR 75-99. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 15, 2017. AR 1-7. This action was commenced on January 10, 2018. Docket # 1.

   B.   **Factual Background**

Overall, both parties accurately state the contents of the administrative record, although they have highlighted different aspects thereof in their respective recitations of the facts. Their disputes center around whether the ALJ's decision is supported by substantial evidence, or whether, in the alternative, the case should be remanded for either the calculation and award of benefits or further proceedings. Accordingly, rather than provide a lengthy recitation of the facts based on the ample administrative record, the Court adopts the factual background as set forth in

---

[1] The Disability Determination Explanation dated September 10, 2014, notes that the initial claim for disability was filed on June 13, 2014, Administrative Record ("AR") 66, but the Application Summary for Supplemental Security Income included in the administrative record states that Plaintiff applied for SSI on behalf of Claimant on July 8, 2014. AR 122.

the parties' briefs and discusses the evidence in the record to the extent necessary to a determination of the issues raised herein.

## II. APPLICABLE LEGAL PRINCIPLES

### A. Standard of Review

The scope of review in an appeal from a social security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to determine whether the Commissioner applied the correct legal standard when determining that the plaintiff was not disabled. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Failure to apply the correct legal standard is grounds for reversal of the ruling. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Second, the court must decide whether the Commissioner's decision was supported by substantial evidence. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 106 (internal quotation marks and citations omitted). When determining whether substantial evidence supports the Commissioner's decision, it is important that the court "carefully consider[] the whole record, examining evidence from both sides." Tejada, 167 F.3d at 774 (citing Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997)). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted). If the "decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its own] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

### B. <u>Determining Disability</u>

The SSI program provides benefits to "needy aged, blind, or disabled individuals" who meet certain statutory income and resource limitations. <u>Ruff ex rel. LMF v. Colvin</u>, No. 14-Civ-2433 (RWS), 2015 WL 694918, at *8 (S.D.N.Y. Feb. 18, 2015) (citing 42 U.S.C. § 1381 <u>et</u> <u>seq.</u>). A child under the age of 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

Pursuant to Social Security regulations, an ALJ applies a three-step analysis to determine whether a particular child claimant is disabled. 20 C.F.R. § 416.924. First, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the claimant is not, the ALJ proceeds to the second step, where he or she considers whether the claimant has a medically determinable impairment which is severe. 20 C.F.R. § 416.924(c). An impairment is "severe" if it results in more than a "slight abnormality" or if it constitutes a "combination of slight abnormalities that causes . . . more than minimal functional limitations." 20 C.F.R. § 416.924(c).

At the third and final step, the ALJ determines whether the claimant's impairment(s) meets, medically equals, or functionally equals the criteria of an impairment found in 20 C.F.R. Pt. 404 Subpt. P., App. 1 (the "Listings"). 20 C.F.R. § 416.924(d). To "functionally equal" a Listing, the claimant must demonstrate that his or her impairments "result in 'marked' limitations

in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a.[2] There are six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A "marked" limitation is one which "interferes seriously" with a child's ability to independently initiate, sustain, or complete activities and is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one which "interferes very seriously" with a child's ability to independently initiate, sustain, or complete activities; it is a rating reserved for the worst limitations. 20 C.F.R. § 416.926(e)(3)(i).

## III. DISCUSSION

In his motion for judgment on the pleadings, Plaintiff seeks to have the Commissioner's decision denying SSI benefits reversed and the case remanded for the calculation and award of benefits or, in the alternative, for further administrative proceedings. Plaintiff contends that (1) the ALJ overlooked evidence that Claimant had marked limitations in the domains of acquiring and using information and interacting and relating with others, i.e., the ALJ's decision is not supported by substantial evidence (because the evidence in the record establishes disability); (2) the ALJ failed to develop the record; and (3) the ALJ failed to issue an intelligible decision. Mem. of Law in Supp. (Docket # 16). In contrast, in her cross-motion for judgment on the pleadings, the Commissioner contends that the ALJ's decision is legally correct, supported by substantial evidence, and should be affirmed. Mem. of Law in Opp'n (Docket # 18).

---

[2] Subsection (b)(3) of this regulation was amended effective March 27, 2017, but the amendment is immaterial to the issues in this case.

### A. The ALJ's Decision

On October 13, 2016, the ALJ issued a written decision denying Plaintiff's application for SSI benefits on behalf of Claimant. AR 75-99. Performing the three-step analysis set forth above, the ALJ first noted that Claimant, who was born on February 12, 2007, was a school-age child on June 13, 2014, the date that her SSI application was filed, and was a school-age child on the date of the decision. AR 84. The ALJ found that Claimant had not engaged in substantial gainful activity since June 13, 2014. Id. At step two, the ALJ stated that Claimant suffered from the severe impairments of separation anxiety disorder, anxiety, and attention deficit hyperactivity disorder (ADHD). Id. The ALJ found that Claimant also had the nonsevere impairments of obesity and hypothyroidism, but he noted that records from Claimant's teacher, as well as treatment records and the consultative examination, all showed that Claimant had no physical limitations. Id. At step three, the ALJ found that Claimant's impairments, whether considered singly or in combination, neither met nor medically equaled the severity of a Listing. Id. The ALJ also found that Claimant's impairments, whether considered singly or in combination, did not functionally equal the severity of a Listing. Id. In reaching his conclusion as to functional equivalence, the ALJ found that Claimant did not have marked limitations in two domains of functioning or extreme limitations in one domain of functioning. AR 89-93. Rather, the ALJ determined that Claimant had no limitations in the domains of moving about and manipulating objects and health and physical well-being, and had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself. Id. Consequently, the ALJ determined that Claimant was not disabled. AR 94.

**B.      Evidence of Limitations in the Domains of Functioning**

**1.      Acquiring and Using Information and
          Interacting and Relating with Others**

In his motion papers, Plaintiff argues that the ALJ erred in his evaluation of the evidence concerning, in particular, Claimant's functioning in the domains of acquiring and using information[3] and interacting and relating with others.[4]  Plaintiff contends that Claimant's scores on the CELF-4 (Clinical Evaluation of Language Fundamentals, 4th Edition), which was administered on May 31, 2014, and placed her at a standard deviation of "-2," see AR 171, 297, alone establishes disability.  Mem. of Law in Supp. at 18; see id. ("language scores in the range achieved by R.R.O. normally necessitate a finding that the child has a marked limitation in the domain" of acquiring and using information).[5]  However, the Social Security regulations state

---

[3] The Social Security regulations state that with respect to the domain of acquiring and using information, "we consider how well you acquire or learn information, and how well you use the information you have learned."  20 C.F.R. § 416.926a(g).  In the case of school-age children, ages 6 to 12, the Social Security regulations state with respect to this domain that children without an impairment "should be able to learn to read, write, and do math, and discuss history and science" and "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others."  20 C.F.R. § 416.926a(g)(2)(iv).

[4] The Social Security regulations state that with respect to the domain of interacting and relating with others, "we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  In the case of school-age children, ages 6 to 12, the Social Security regulations state with respect to this domain that children without an impairment "should be able to develop more lasting friendships with children who are your age"; "should begin to understand how to work in groups to create projects and solve problems"; "should have an increasing ability to understand another's point of view and to tolerate differences"; and "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand."  20 C.F.R. § 416.926a(i)(2)(iv).

[5] Plaintiff argues that "[a]ll three scores [for core, receptive, and expressive language] were below the -2 standard deviation cutoff (70) for a 'marked' limitation."  Mem. of Law in Supp. at

7

that "we will find that you have a 'marked' limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, **and your day-to-day functioning in domain-related activities is consistent with that score**." 20 C.F.R. § 416.926a(e)(2)(iii) (emphasis added); see also 20 C.F.R. § 416.926a(e)(4) ("[W]e will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."). Therefore, if there was substantial evidence in the record for the ALJ to find that Claimant's day-to-day functioning was not consistent with her score on the CELF-4, her performance on that test would not be dispositive of the question of whether she had a marked limitation in the domain of acquiring and using information. See Johnson ex rel. A.J. v. Astrue, No. 11 Civ. 5247 (JMF), 2013 WL 1187436, at *13 (S.D.N.Y. Mar. 22, 2013) (where claimant had scored between 2 and 3 standard deviations below the norm on the Preschool Language Scale 4 test, the court held that this was "not sufficient to require an ALJ to make a finding that a child has a marked limitation in a domain" and that "as long as there was sufficient evidence for the ALJ to conclude that A.J.'s day-to-day functioning was not consistent with her score on the PLS-4, her performance on that test was not dispositive"); see also Miles ex rel. J.M. v. Astrue, 502 F. App'x 59, 61 (2d Cir. 2012) (20 C.F.R. § 416.926a(e)(2)(iii) "does not compel a finding of disability based on one standardized test").

  Here, the ALJ noted that Claimant's scores on the CELF-4 indicated a two-year delay. AR 85; see AR 169-72, 295-98. He also noted, however, that the psychoeducational evaluation

---

11 (citing AR 171 and Claimant's scores of 69 for core language and expressive language and 64 for receptive language). The Commissioner notes that the assessment revealed "scores two standard deviations below the mean." Mem. of Law in Opp'n at 4.

8

report, which discussed the results of the CELF-4 assessment as well as the other assessments conducted on that same date, stated that Claimant's overall cognitive functioning was assessed to be in the borderline range on the WISC-IV,[6] but that Claimant's WISC-IV "subtest scale scores suggest higher potential for learning due to marked (sic) scattered among the subtests." AR 86 (internal quotation marks omitted); see also AR 309 (psychoeducational evaluation report noted that Claimant's "performance in the subtests administered indicated great variability among the skills tested"). The ALJ also observed that Michael Kushner, Ph.D., who conducted a consultative mental status evaluation of the Claimant on October 7, 2015, "opined that the results of the examination appear to be consistent with psychiatric and cognitive problems that do 'not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.' " AR 88; see also AR 360 (as to Claimant's speech, Dr. Kushner noted, "Expressive language was age appropriate. Receptive language was age appropriate."). In addition, the June 2015 Individualized Education Program (IEP) from Claimant's school stated that Claimant was reading at level J, which is "the benchmark for mid 1st grade," AR 706, but that Claimant had "shown improvement in her ability to decode and to retell a story using the key details." Id.[7]

---

[6] The psychoeducational evaluation report explains that the Wechsler Intelligence Scale for Children-Fourth Edition, or WISC-IV,

> is an individually administered clinical instrument for assessing children's intelligence. It provides composite scores that represent intellectual functioning in specified cognitive domains (i.e. Verbal Comprehension Index, Perceptual Reasoning Index, Working Memory Index and Processing Speed Index), as well as providing a composite score that represents a child's general intellectual ability (i.e. Full Scale IQ).

AR 309. The report notes that Claimant's Full Scale IQ was a 77, which placed her in the 6th percentile. Id.

[7] The ALJ noted that Claimant's 2014 IEP stated that she "was behind academically and struggled with decoding words and with comprehension, and was receiving speech and language

Nonetheless, Claimant was performing below grade level in writing, but this was "mostly due to her inability to focus, follow directions and complete projects," and she struggled with math "also mostly due to her lack of attention during whole class instruction." Id.; see also AR 94 (ALJ stated that "the teacher questionnaire (Exhibit 5F) was from 2014 but noted that the claimant's main problem was concentrating to learn new things"). Finally, the ALJ cited the discharge summary filled out in February, 2016, after Claimant attended her last treatment session at the Metropolitan Center for Mental Health (MCMH) on January 18, 2016, which stated that Claimant's symptoms were "decreased" and "improving"[8] and that during her period of treatment (from June 10, 2014, to January 18, 2016), Claimant "made markedly [sic] improvements in her behaviors and in her academic performance." AR 625; see AR 89.

Thus, there is substantial evidence in the record to support the ALJ's conclusion that in the domain of acquiring and using information, Claimant had a less than marked limitation.

With respect to the domain of interacting and relating with others, Plaintiff contends that "language function is as critical to this domain as it is to Acquiring and Using Information," Mem. of Law in Supp. at 19, and that "there is a considerable body of case law recognizing, not only that a severe language disorder must be evaluated in both domains, but also that a marked or extreme limitation in one domain is usually accompanied by a marked or extreme limitation in

---

therapy." AR 88-89. The 2015 IEP also noted that Claimant had "shown some improvement in her fluency and comprehension," AR 706, and that Claimant "love[d] reading fiction texts and discussing what is happening with the character" and "enjoy[ed] participating in group and partnership conversations." Id.

[8] The discharge summary lists Claimant's diagnoses as separation anxiety disorder, oppositional defiant behavior disorder, and parent-child relational problem. AR 624. There appears to be a fourth condition listed under diagnoses, but it is hard to read the handwriting on the document, and neither party states that there was a fourth diagnosis. However, a treatment plan review from MCMH dated December 16, 2015, includes as a fourth disorder/condition "child affected by parental relationship distress." AR 641.

the other." Id. at 20 (citing cases). Indeed, as one of the cases cited by Plaintiff states, "In recognizing that 'communication' comprises both speech and language, and that language is used both for learning and for interacting and relating to peers, the SSA regulations require that a child's problems with speech and language be considered in both the Acquiring and Using Information and Interacting and Relating with Others domains." Robbins v. Comm'r of Soc. Sec., 04 CV 2568 (NG)(JMA), 2006 U.S. Dist. LEXIS 2781, *23 (E.D.N.Y. Jan. 13, 2006) (citation omitted). But, as that case adds, "a finding of a 'marked' limitation in one domain **does not automatically** warrant a finding of a 'marked' limitation in the other . . .." Id. (emphasis added).

The ALJ noted that examples of limited functioning in this domain include "difficulty speaking intelligibly or with adequate fluency," AR 91, but the May 31, 2014, speech/language assessment cited by the ALJ, AR 85, found that Claimant's speech "was intelligible throughout the assessment period and no verbal dysfluencies were noted." AR 298; see also AR 159 (June 2014 IEP). Rather, the evaluator found that Claimant exhibited a "frontal lisp that is affecting his [sic[9]] fricative and sibilant sounds." Id. A questionnaire completed on October 8, 2014, by Claimant's second grade teacher, Ms. Grube, who saw Claimant every day for all subjects, rated Claimant as having an obvious problem only with respect to one of the 13 key activities within this domain, "[u]sing adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation," and otherwise rated Claimant as having only slight or no problems with respect to 10 of the remaining key activities (she failed to rate Claimant at all with respect to two key activities—"[e]xpressing anger appropriately" and "[f]ollowing rules (classroom, games,

---

[9] Although the speech/language assessment notes at the top of the first page that Claimant's gender is female, it also states that she is a boy and interchangeably uses the words "she," "he," "her," "his," and "him." See AR 295-98.

11

sports)"). AR 323. Additionally, Ms. Grube checked off that it had not been necessary to implement behavior modification strategies with Claimant, but she noted that Claimant "tend[ed] to be bossy with her peers." Id. Lastly, with respect to this domain, Ms. Grube checked off that "Almost All" of Claimant's speech could be understood by a familiar listener on the first attempt when the topic of conversation was either known or unknown, as well as after repetition and/or rephrasing. AR 324.

As cited by the ALJ, Dr. Kushner reported in his evaluation that Claimant's "demeanor and responsiveness to questions was cooperative, and her manner of relating, social skills, and overall presentation were age-appropriate." AR 87; see AR 360.[10] With respect to Claimant's speech, Dr. Kushner stated, "Overall intelligibility was good. Quality of voice was clear. Expressive language was age appropriate. Receptive language was age appropriate." AR 360. Dr. Kushner opined that Claimant had mild to moderate limitations in terms of both adequately maintaining appropriate social behavior and interacting adequately with peers and adults. AR 361.

A social history evaluation performed on June 3, 2014, and cited by the ALJ, noted that although Claimant's parents reported that Claimant had a "history of serious behavior problems at home," during her first grade year, Claimant was "well behaved in school" and that although her teacher reported that Claimant could "become irritable at times," there had been "no significant behavior difficulties in school." AR 305-06. A psychoeducational evaluation

---

[10] Among the evidence cited in the ALJ's decision was also the report of the consultative pediatric examination by Gregory Bard, M.D., in which Dr. Bard noted that Claimant's speech and behavior were "normal for age" and that Claimant "related to the examiner and person with them in an age-appropriate way. The child appeared to have normal attention span for age." AR 364; see AR 88.

12

performed on May 31, 2014, also cited by the ALJ, noted that "[d]uring the time spent with the examiner [Claimant] was quite cooperative. She did not show any signs of maladaptive behavior." AR 311. The evaluation report nonetheless noted that although Claimant's parents reported that during first grade, "her behavioral issues have somewhat decreased[,] she still presents with unmanageable behaviors that warrant professional intervention," noting "anger and oppositional issues that make it difficult for them and teachers to handle her." Id. Claimant's parents reported that Claimant was receiving therapy at Metropolitan Hospital at that time. Id. Treatment records from MCMH reflect improvement in Claimant's behavior over time. AR 341 (noted in September, 2014, that Claimant was "calmer in school & at home, not as angry as before nor as aggressive towards her parents"), 337 (noted in March, 2015, that Claimant "has 2 friends in school" and "obeys her parents"), 625-26 (noted in discharge summary from February, 2016, that Claimant made marked improvements in her behaviors with decreasing frequency and intensity of her symptoms).

In sum, there is substantial evidence in the record to support the ALJ's conclusion that in the domain of interacting and relating with others, Claimant had a less than marked limitation.

### 2. Attending and Completing Tasks and Caring for Yourself

Plaintiff contends, "Given the strength of the evidence in these two domains [acquiring and using information and interacting and relating with others], no great purpose would be served by discussing at length R.R.O.'s potentially marked limitations in other domains, but they should at least be mentioned." Mem. of Law in Supp. at 21. Plaintiff then states in conclusory fashion that Claimant "has well-documented problems with focus and attention that obviously

impact the domain of Attending and Completing Tasks." Id.[11]  However, Plaintiff provides no argument as to why the ALJ erred in concluding that Claimant had a "less than marked limitation" in this domain.  Indeed, as the Commissioner points out, and as the Court agrees, there is "substantial evidence in the record as a whole" to support the ALJ's finding that Claimant had a less than marked limitation in this domain.  Mem. of Law in Opp'n at 19 (citing May 31, 2014, psychoeducational evaluation report, teacher questionnaire, Dr. Kushner's consultative examination report, and 2015 IEP).[12]

Plaintiff also argues that Claimant "has considerable difficulties in the domain of Caring for Yourself,"[13] adding that Claimant

---

[11] The Social Security regulations state that with respect to the domain of attending and completing tasks, "we consider how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them."  20 C.F.R. § 416.926a(h).  In the case of school-age children, ages 6 to 12, the Social Security regulations state with respect to this domain that children without an impairment "should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments"; "should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments)"; "should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate"; "should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores"; and "should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation."  20 C.F.R. § 416.926a(h)(2)(iv).

[12] The ALJ acknowledged the evidence in the record concerning Claimant's issues with focusing and remaining on-task, citing the 2015 IEP, AR 93, but he noted that, as evidenced by the treatment records from MCMH, Claimant had made "marked" improvements in her behavior and academic performance.  AR 94.

[13] The Social Security regulations state that with respect to the domain of caring for yourself, "we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area."  20 C.F.R. § 416.926a(k).  In the case of school-age children, ages

>cannot sleep alone. She has delayed ADLs (toileting, bathing, bottle
>feeding at age 5). She has expressed suicidal thoughts. She engages in
>self-injurious behaviors (biting and choking herself, pulling her own hair,
>hitting her head on walls). She is often unable to control her own
>impulses and behaviors.

Mem. of Law in Supp. at 21. However, there is substantial evidence in the record to support the ALJ's conclusion that Claimant had a less than marked limitation in this domain. Mental health records reflected improvements in Claimant's behavior over time and also noted on repeated occasions that she was not a danger to herself or others. AR 331-58, 623-43; see AR 94. Dr. Kushner opined that Claimant had "no evidence of limitation and mild limitation" with respect to "responding appropriately to changes in the environment," and only mild to moderate limitations with respect to "being aware of danger and taking needed precautions." AR 361. Claimant's mother testified at the hearing that although Claimant had engaged in unsafe behavior when she was younger, Claimant was now "more controlled." AR 64. The June 3, 2014, social history evaluation report notes that Claimant "still demands assistance with personal hygiene but this does not seem to be an issue of ability." AR 306.[14] Although the ALJ stated in his decision that

---

6 to 12, the Social Security regulations state with respect to this domain that children without an impairment "should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely"; "should begin to recognize that you are competent in doing some activities and that you have difficulty with others"; "should be able to identify those circumstances when you feel good about yourself and when you feel bad"; "should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior"; "should begin to demonstrate consistent control over your behavior"; "should be able to avoid behaviors that are unsafe or otherwise not good for you"; and "should begin to imitate more of the behavior of adults you know." 20 C.F.R. § 416.926a(k)(2)(iv).

[14] The Function Report completed by Plaintiff on July 8, 2014, reported that in the realm of self-care, Claimant could use zippers, comb/brush her hair, choose her clothes, eat by herself, pick up and put away toys, hang up clothes, help around the house, do what she was told most of the time, obey safety rules, and get to school on time. AR 145.

in the mental health records, Claimant "was said to be able to care for herself," AR 94, the Court has not been able to find such a statement in the cited mental health records. Nonetheless, there is substantial evidence to support the ALJ's finding with respect to this domain.[15]

### C. Remand to Develop the Record/Provide Rationale for ALJ's Decision

Plaintiff argues, in the alternative, that the decision should be reversed and remanded based on the ALJ's failure to develop the record. Mem. of Law in Supp. at 21-23. Plaintiff cites the hearing testimony of Claimant's mother, who testified that Claimant was due to resume treatment with SBMHP (School-Based Mental Health Program) "next month," i.e., August, 2016. Id. at 22; see AR 61. Plaintiff contends that the ALJ

> should have obtained records from the school describing the behaviors that caused the school to urge "more intensive therapy." Moreover, since [the ALJ] did not issue his decision until October 13, 2016, he should have obtained the records available by then from SBMHP. At a minimum, he should have alerted [Claimant's] unrepresented parents at the hearing to the potential importance of the records, so they could obtain them themselves.

Id. at 22-23.

"Pursuant to the SSA regulations, the duty to develop medical records normally extends only to obtaining medical history for at least the twelve months preceding the month of application." Gonzalez v. Comm'r of Soc. Sec., 17 Civ. 1976 (JCM), 2018 WL 4054866, at *12 (S.D.N.Y. Aug. 24, 2018) (internal quotation marks, brackets, and citation omitted). "Whether the ALJ has a duty to develop the record with respect to treating sources after the date of filing is not settled and may depend on the facts of the case." Id. (internal quotation marks and citation omitted). Although "some courts have held that the duty to develop the record does not require

---

[15] As Plaintiff does not contest the ALJ's findings with respect to the domains of moving about and manipulating objects and health and physical well-being, the Court does not address them herein.

16

the ALJ to obtain medical records generated after the filing date of the claimant's application," id. (citing e.g., Brown v. Comm'r of Soc. Sec., 709 F. Supp. 2d 248, 257 (S.D.N.Y. 2010); Infante v. Apfel, No. 97 CIV. 7689 (LMM), 2001 WL 536930, at *7 (S.D.N.Y. May 21, 2001); Centano v. Apfel, 73 F. Supp. 2d 333, 337 (S.D.N.Y. 1999)), there are cases in which courts have held that the duty to develop the record applies to the period between the date of the claimant's application for benefits and the claimant's hearing date, id. (citing e.g., Corporan v. Comm'r of Soc. Sec., No. 12-Civ-6704 (JPO), 2015 WL 321832, at *27 (S.D.N.Y. Jan. 23, 2015); Moreira v. Colvin, No. 13 Civ. 4850 (JGK), 2014 WL 4634296, at *5 n.2 (S.D.N.Y. Sept. 15, 2014)).

Plaintiff has not provided any legal support for the proposition that the ALJ has a duty to develop the record during the time period after the hearing but before issuing a decision where, as here, the records do not relate to treatment that was ongoing at the time of the hearing. Plaintiff does not point to any gaps in the record that existed as of the time of the hearing which would undermine the Court's conclusion that the ALJ's decision, based on that record, was supported by substantial evidence. Moreover, although the administrative record includes documents submitted to the Appeals Council which relate primarily to the post-decision period but include an undated letter faxed to SSA on May 18, 2017, which states that Claimant "was evaluated . . . in August 2016 and has been receiving ongoing treatment services since that time," AR 24, Plaintiff's counsel "has not identified any evidence that suggests that [the evaluation report and treatment notes from August, 2016, to the date of the ALJ's decision] would materially alter the ALJ's analysis." Gonzalez, 2018 WL 4054866, at *13.[16] Accordingly,

---

[16] The Appeals Council noted that "[t]he Administrative Law Judge decided your case through October 13, 2016. This additional evidence does not relate to the period at issue. Therefore, it

17

remand to develop the record is not warranted.

      Plaintiff additionally argues that the ALJ "failed to issue an intelligible decision that can be meaningfully reviewed by the courts." Mem. of Law in Supp. at 23. However, where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the court] do[es] not require that he [or she] have mentioned every item of testimony presented to him [or her] or have explained why he [or she] considered particular evidence unpersuasive or insufficient to lead him [or her] to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982), in which the Second Circuit stated that it would not remand a case where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his [or her] determination was supported by substantial evidence."). As is apparent from the Court's determination above that the ALJ's findings concerning the functional domains were supported by substantial evidence, the Court was able to glean the rationale of the ALJ's decision from both the decision as a whole and the evidence of record. Accordingly, remand on this basis is likewise not warranted.

---

does not affect the decision about whether you were disabled beginning on or before October 13, 2016." AR 2.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Docket # 15) is denied, the Commissioner's cross-motion for judgment on the pleadings (Docket # 17) is granted, and the case is dismissed.

Dated: May 16, 2019
       White Plains, New York

**SO ORDERED,**

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York